IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KAYLA PENNINGTON and DAYLEN PENNINGTON,**

    **Plaintiffs,**

    v.                                                  Civil Action No. 2:24-cv-30
                                                                       (KLEEH)

**DESIGN 1 GROUP, LLC, JENNINGS H. COLE, CONNEXUS CREDIT UNION and SOLAR MOSAIC, LLC,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR REMAND [ECF NO. 16] AND GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [ECF NO. 4]**

Pending before the Court is Plaintiffs Kayla and Daylen Pennington's Motion for Remand [ECF No. 16] and Defendant Solar Mosaic, LLC's Motion to Compel Arbitration [ECF Nos. 4, 5]. For the reasons stated herein, Plaintiffs' Motion [ECF No. 16] is **DENIED** and Defendant's Motion [ECF Nos. 4] is **GRANTED**.

                                      **I.  PROCEDURAL HISTORY**

Plaintiffs Kayla and Daylen Pennington (collectively "Plaintiffs") filed the Complaint in the Circuit Court of Raleigh County, West Virginia on October 23, 2024. On October 31, 2024, the Circuit Court of Raleigh County transferred the action to the Circuit Court of Randolph County, West Virginia. ECF No. 1-4, at p. 52. Defendant Solar Mosaic LLC ("Mosaic") removed the case to this Court on November 13, 2024. ECF No. 1. Mosaic filed the

subject Motion to Compel Arbitration on December 4, 2024. ECF No. 4.[1] Plaintiffs filed their response on January 8, 2025. ECF No. 21. Defendants Mosaic and Connexus Credit Union ("Connexus") filed their reply to the Plaintiffs' response on January 22, 2025. ECF No. 24. Plaintiffs filed the subject Motion to Remand [ECF No. 16] and accompanying memorandum [ECF No. 17] on January 8, 2025. Defendants Mosaic and Connexus filed a response to the motion [ECF No. 23] and Plaintiffs replied to the response [ECF No. 25]. Mosaic filed three Notices of Supplemental Authority. ECF Nos. 10, 27, and 34. The motions are fully briefed and ripe for review. Defendants Design 1 Group, LLC and Jennings H Cole have not noticed an appearance in this matter.

## II.   FACTUAL BACKGROUND

In or around October 2021, the Plaintiffs saw an advertisement posted by Design 1 Group, LLC ("D1G") for solar panels that promised savings in energy costs. Compl., ECF No. 1-4, at ¶ 10. The Plaintiffs responded to the advertisement and a salesperson from D1G, Bryant Woods, came to the Pennington's home on October 30, 2021. Id. at ¶¶ 11-12.

---

[1] Defense counsel noted that the motion to compel arbitration is found in two places on the docket at ECF Nos. 4 and 5. Counsel stated the duplicate filings were a result of mailing a copy of the motion after e-filing. The documents are identical; hereinafter, the Court cites to the Motion to Compel Arbitration as ECF No. 4.

According to the Complaint, Mr. Woods made several misrepresentations during the sale. Id. at ¶ 13. "These misrepresentations included, but may not have been limited to (1) the solar panels could substitute for a generator in the event of a power outage, (2) the Penningtons would see a minimum 74% reduction in their power bill and their electric bill would never exceed $40 a month, (3) twelve panels would be sufficient to provide the Penningtons the savings represented, (4) the Penningtons would receive a tax credit that would ensure their payments would remain at a low $168 a month, and (5) D1G would provide the Penningtons a $3,888 rebate." Id. Based on Mr. Woods' representations, Ms. Pennington agreed to purchase the solar panels and finance them with Defendants Connexus and Mosaic. Id. at ¶ 15. To execute the sale, "Mr. Woods requested that Ms. Pennington consent to electronically affix her initials and signature to several electronically stored documents on Mr. Woods' iPad." Id. at ¶ 16.

Plaintiffs allege that Ms. Pennington's consent to electronically sign the documents extended only to her agreement to purchase and install the solar panels and the accompanying agreement to finance the solar panels with Connexus and Mosaic. Id. According to Plaintiffs, Mr. Woods did not explain the documents or the terms of those documents before Ms. Pennington agreed to sign them. Id.

3

Days after the sale, Ms. Pennington received a copy of the contract with D1G. The contract outlined the parties' agreement, stating that the Penningtons would purchase twelve roof mounted solar panels and batteries to be installed by D1G for the total price of $50,825.00. Id. at ¶ 18. The contract provides that the Penningtons would save 74% on their power bills and, if they did not save within 10% of that amount, D1G would give the Penningtons a rebate of $500. Id. at ¶ 19. The contract further states that, upon completion of the installation of the panels, D1G would provide the Penningtons with a rebate of $3,888.00. Id. at ¶ 22. Additionally, the contract permitted D1G to submit an application for the financing of the contract purchase price. Id. at ¶ 23. Plaintiffs allege that the contract also contained a cancellation provision that fails to comply with the form proscribed by West Virginia and federal law. Id. at ¶ 21.

According to the Complaint, Ms. Pennington was unaware that her electronic signature was affixed to the credit documents ("Loan Agreement") in conjunction with the sale. Id. at ¶ 24. The Loan Agreement is dated the same day as the solar panel sale, October 30, 2021. Id. at ¶ 25. Plaintiffs allege that Ms. Pennington was not shown the terms or material disclosures contained in the Loan Agreement prior to or immediately after the transaction and did not consent to having her electronic signature affixed to them. Id. at ¶ 26. Instead, Plaintiffs allege that Ms. Pennington's

electronic signature only extended to her agreement to finance the solar panels for $168 for 298 months and that her signature was motivated by an assignable tax credit as provided in the contract. Id. at ¶¶ 27-29.

The Loan Agreement also included an arbitration clause. Id. at ¶ 33. Plaintiffs state that Ms. Pennington never saw the arbitration clause and did not consent to affixing her electronic signature onto the arbitration clause. Id. Plaintiffs state that Mr. Woods never mentioned arbitration and that the Penningtons did not understand what arbitration was at the time. Id. The Complaint states that Defendants did not email or in any way deliver the agreement or disclosures for over a year after the transaction was completed on October 30, 2021. Id. at ¶ 34.

In the three days after October 30, 2021, Ms. Pennington followed up with Mr. Woods to confirm that the Penningtons would receive the savings as promised. Id. at ¶ 35. Mr. Woods promised that the system would provide savings and that D1G would remedy the situation if the Penningtons were not saving the money promised. Id.

In late February 2022, the Plaintiffs were informed that installation of the panel system was complete and that their payments pursuant to the Loan Agreement would commence. Id. at ¶ 39. Following installation, Plaintiffs did not see savings on their power bill as promised. Id. at ¶ 40. While the panels were

5

installed in or around February 2022, they were not activated until late May or early June 2022. Id. at ¶¶ 37-38. The Complaint notes that "[t]he installation was characterized by excessive delay and poor workmanship." Id. at ¶ 36.

In March 2023, the Plaintiffs made a complaint with the West Virginia Attorney General. Id. at ¶ 44. Plaintiffs allege that they had seen the Loan Agreement for the first time when the West Virginia Attorney General forwarded Mosaic's response to them. Id. at ¶ 46. Plaintiffs sent Notices of Opportunity to Cure letters dated August 23, 2024, to D1G, Mosaic, and Connexus. Plaintiffs state that more than forty-five days have passed, and Defendants have failed to cure their violations of the West Virginia Consumer Credit and Protection Act. Id. at ¶ 48.

### III. LEGAL STANDARD

#### A. Motion for Remand

When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (4th Cir. 1994). A party may remove to federal court any state "civil action where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. §§ 1332(a), 1441(a). An action must be fit for federal adjudication at the time the removal petition is filed. See 28 U.S.C. § 1441(a); Moffitt v. Residential Funding

6

Co., LLC, 604 F.3d 156, 159 (4th Cir. 2010). When a party removes an action based upon diversity of citizenship, the removing party bears the burden of establishing "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332.

**B. Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") governs written agreements to arbitrate a controversy arising out of a contract. An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. There is a "strong federal policy in favor of enforcing arbitration agreements." Hayes v. Delbert Servs. Corp., 811 F.3d 666, 671 (4th Cir. 2016) (citation omitted).

Of course, "[a] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted). When parties disagree about whether they formed an agreement to arbitrate at all, "the dispute is generally for courts to decide." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010) (citation omitted). "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." May v. Nationstar Mortg., LLC, No. 3:12-

7

CV-43, 2012 WL 3028467, at *4 (N.D.W. Va. July 25, 2012) (citations omitted). As such, "the district court must determine — as a condition precedent to the entry of any § 3 stay or § 4 order compelling arbitration — whether that party is entitled to enforce the arbitration agreement under state contract law." Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 287 (4th Cir. 2023).

### IV. DISCUSSION

For the following reasons, Plaintiffs' Motion for Remand [ECF No. 16] is **DENIED** and Defendant Mosaic's Motion to Compel Arbitration [ECF No. 4] is **GRANTED**.

#### A. Plaintiffs' Motion for Remand

Plaintiffs' Motion for Remand is **DENIED** because Defendant has established that the jurisdictional threshold is met by a preponderance of the evidence. To establish removal jurisdiction, the defendant must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount. Kreitzer v. Safeco Ins. Co. of Am., No. 5:22-CV-312, 2023 WL 11115140, at *2 (N.D.W. Va. Jan. 23, 2023). "To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000." Id. The amount in controversy "is determined by considering the judgment that would be entered if plaintiff prevailed on the merits. Id. (citing Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 936-37 (S.D.W. Va. 1996)). In

determining whether the jurisdictional threshold is met, the court may consider the following:

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal, although the weight to be given such demands is a matter of dispute among courts.

Id. (quoting Watterson v. GMRI, Inc., 14 F.Supp.2d 844, 850 (S.D. W. Va. 1997). Finally, in resolving the amount in controversy issue a court "is not required to leave its common sense behind." Mullins v. Harry's Mobile Homes, 861 F.Supp. 22, 24 (S.D. W. Va. 1994).

Here, Mosaic removed this action under diversity jurisdiction, asserting that the amount in controversy more likely than not exceeds $75,000 based on the face of the Complaint. ECF No. 1, at ¶¶ 15-18. Specifically, Mosaic argues that the jurisdictional threshold amount is easily met by considering "the number of claims asserted, the loan amount and the fact that Plaintiffs seek rescission, incidental and consequential damages, in addition to compensation for breach of the West Virginia Home Solicitation Statute and attorneys' fees." Id. at ¶ 22. Plaintiffs contend that Mosaic relies "purely on speculation" and has not

9

provided adequate support for the amount in controversy being met. ECF No. 17, at p. 12.

Defendants[2] cite the Truth in Lending Act Disclosure which states that the amount financed for the project is $50,825 and identifies a finance charge of $14,077.69, making the total value of the contract $64,902.69. ECF No. 36, at p. 4:6-9, ECF No. 5-3, at p. 7. Defendant also calculates $2,106.11 in damages for the difference in promised electricity payments and what the Penningtons actually paid. ECF No. 23, at p. 4. Further, Defendants calculate the damages for the statutory violations alleged as $3,979.14. Id. at p. 5. According to Defendants' calculations and without considering attorneys' fees, the amount in controversy stands at $70,987.94.

Defendants argue that the amount of attorneys' fees recoverable in this case is more than sufficient to satisfy the jurisdictional amount. To support their argument, Defendants cite the length of the Complaint and the effort expended in drafting both the Complaint and right to cure letters. ECF No. 36, at pp. 4:4-9:1. Defendants also note that there are two attorneys working on Plaintiffs' case and that it is likely that Plaintiffs' counsel interviewed Plaintiffs before drafting any documents on their behalf. Id. at p. 8:10-13. In further support, Defendants attached

---

[2] Herein, "Defendants" refer to Mosaic and Connexus because they are the only defendants to have entered an appearance.

an affidavit stating that Plaintiffs' counsel's rate was $425 three years ago, as well as a settlement demand from a similar case that was $36,000. ECF No. 23-1. See also ECF No. 36, at pp. 8:18-9:1.

Plaintiffs argue that "Defendants cloak their conjecture as common sense, asserting their 'estimates' of the attorney's fees at issue here amount to sufficient evidence to exceed the jurisdictional threshold." ECF No. 24, at p. 3. Notably, Plaintiffs do not stipulate that their claims will not exceed $75,000.

Based upon its review of the record, the Court finds that it is more likely than not that the amount in controversy exceeds the jurisdictional requirement. The Court finds that an award of attorneys' fees alongside the relief sought by the Complaint, including "economic damages [for] . . . annoyance, inconvenience and worry and stress," point to the $75,000 threshold being satisfied. As such, the Plaintiffs' Motion for Remand [ECF No. 16] is **DENIED**.

### B. Defendants' Motion to Compel Arbitration

For the reasons stated herein, Defendants' Motion to Compel Arbitration is **GRANTED**.

#### 1. All elements of a valid contract are present with respect to the arbitration provision at issue.

The United States Supreme Court has "repeatedly interpreted the FAA to require questions about the validity of an arbitration provision to be severed and adjudicated separately from any other contractual question." Schumacher Homes of Circleville, Inc. v.

11

Spencer, 787 S.E.2d 650, 659 (W. Va. 2016). The arbitration provision in the larger contract must be "carved out, severed from the larger contract, and . . . tested separately under state contract law for validity and enforceability." Id. Accordingly, the Court examines, here, only the validity of the arbitration provision.

The loan agreement contains the following arbitration provision in bold print:

> **16. ARBITRATION AGREEMENT PLEASE READ THE FOLLOWING ARBITRATION TERMS CAREFULLY AS THEY WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.** If either you or we elect to arbitrate a Claim rather than have a court (a judge or a jury) decide the Claim, it will be resolved by individual (not class or class-wide) binding arbitration in accordance with the terms specified in this Arbitration Agreement.
>
> . . .
>
> A "Claim" is any claim, dispute or controversy between you and us, whether preexisting, present or future, which arises out of or relates to the Loan Agreement, any prior agreement you have had with us, the events leading up to your loan (for example, any disclosures, advertisements, promotions or oral or written statements made by us), any product or service provided by us or third parties in connection with your loan, any transaction conducted with us, the collection of amounts you owe us and the manner of collection or the relationship between you and us.
>
> The term "Claim" has the broadest possible meaning. It includes initial claims,

> counterclaims, cross-claims, third-party claims and federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Agreement. It also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief.

Loan Agreement, ECF No. 5-3, at ¶ 16.

In West Virginia, "[t]he fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." Syl. Pt. 3, Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550 (W. Va. 2012) (citing Syl. Pt. 5, Virginian Export Coal Co. v. Rowland Land Co., 131 S.E. 253 (W. Va. 1926)). Here, the only element at issue is mutual assent.

Ms. Pennington's signature appears directly underneath the arbitration provision, evidencing her assent. See Loan Agreement, ECF No. 5-3, at p. 22. She also signed the full Loan Agreement. See Loan Agreement, ECF No. 5-3. Plaintiffs do not dispute that Ms. Pennington agreed to the Loan Agreement. Instead, Ms. Pennington claims that she did not assent to the arbitration clause because she was not provided with the credit documents, she did not know about the clause, and she did not consent to having her electronic signature affixed to the clause. ECF No. 36, at p. 24:1-

13

24. Ms. Pennington did not ask to read the documents before agreeing to the Loan Agreement and Defendants state that "she would have been entitled to do so." Id. at p. 17:24.

In West Virginia, a party has a duty to read the contracts she signs, and knowledge of their contents is imputed to her when she signs them. See Nationstar Mortg., LLC v. West, 785 S.E.2d 634, 641 (W. Va. 2016) ("The fact that the Wests may have signed a document without reading it first does not excuse them from the binding effect of the agreement contained in the executed document,"); see also Reddy v. Cmty. Health Found. of Man, 298 S.E.2d 906, 910 (W. Va. 1982) ("A person who fails to read a document to which he places his signature does so at his peril.").

Plaintiffs do not argue that the arbitration clause is unconscionable or was unconscionably adduced. ECF No. 36, at p. 13:2-3. Further, Plaintiffs do not dispute that their claims fall within the scope of the arbitration agreement or that Mr. Daylen Pennington is bound by the arbitration clause if it is found to be enforceable. Id. at p. 16:5-6.

The Court finds that Ms. Pennington consented to the subject loan transaction and the documents required to execute that transaction. The Court also finds that Ms. Pennington had a duty to read the loan documents in their entirety before agreeing to affix her electronic signature to them and that knowledge of the Loan Agreement's contents was imputed to her when she signed them.

As such, the Court finds mutual assent to the Loan Agreement in its entirety and that all elements of a valid contract are present with respect to the arbitration provision at issue.

### 2. All of the Adkins factors are satisfied.

In the Fourth Circuit,

> a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002). Here, the first factor is satisfied because there is a dispute between the parties, as evidenced by the complaint. See Nationstar Mortg., 2012 WL 3028467, at *8. The second factor is satisfied because, as discussed above, the arbitration provision is valid and enforceable, and it covers "any claim, dispute or controversy between [Connexus] and [the customer] . . . ." Loan Agreement, ECF No. 5-3, at ¶ 16. The third factor is also satisfied because the parties are citizens of different states, and the contract involves a loan to be serviced through interstate commerce. See Nationstar Mortg., 2012 WL 3028467, at *8. The fourth factor is satisfied because Plaintiffs have refused to arbitrate, which, again, is evidenced by the filing of the Complaint. See id. Accordingly, the

Court finds that Mosaic has satisfied its burden in moving to compel arbitration. As such, the Court **GRANTS** the motion to compel arbitration [ECF No. 4].

## V.   CONCLUSION

For the reasons discussed above, Plaintiffs' motion to remand [ECF No. 16] is **DENIED** and Defendants' motion to compel arbitration is **GRANTED** [ECF No. 4].[3] The parties **SHALL** participate in arbitration. This action is thus **DISMISSED** without prejudice pending arbitration and **STRICKEN** from the Court's active docket.[4] Any remaining pending motions are accordingly **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

DATED: May 9, 2025

*/s/ Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

---

[3] The Clerk is **DIRECTED** to **TERMINATE** the duplicate pending Motion to Compel Arbitration [ECF No. 5].
[4] "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001); Simmons v. TA Operating, LLC, 2023 WL 2759771, at *6 (S.D.W. Va. Mar. 31, 2023).